CHIEF JUSTICE WILLIAMS
delivered the opinion op tiie court:
This was a suit upon the note of Morgan for two thousand five hundred and ninety-two dollars, dated New Orleans, La., January 23, 1861, payable at the office of Pilcher & Goodrich, New Orleans, at nine months’ time, with eight per cent, interest, and indorsed by Pilcher & Goodrich and B. P. Scally. The note was not paid at maturity, but protested by a notary public in New Orleans. ~
Morgan, the maker, let judgment go by default; but Scally, the indorser, insists that he is not liable.
The evidence establishes the following facts, to-wit: That Scally resided in Louisville, Ky., when the note fell due, and ever since; that there was then a war between the Southern and Northern States, and no mail communication between New Orleans and Louisville; that the *85 latter post had fallen into the Federal possession, and a mail sent hence to New York May 3, 1862, from which time mail communication became regular and safe once a week; and that the blockade of New Orleans, bv order of the President of the United States, was raised June 1, 1862; that said paper was held by the New Orleans Canal and Banking Company until November 20, 1862, when it was sent by express to the Bank of Louisville, at Louisville, Kentucky, which owned it, and that December 5th, 1862, the cashier of the Bank of Louisville deposited a notice in the post-office at Louisville, notifying Scally of the dishonor of said paper; that by the laws of Louisiana and custom of merchants such paper is regarded as commercial.
Was this a legal notice to the indorser, Scally?
It is insisted by appellee that no protest or notice was necessary, because of the late civil war, Louisville and New Orleans then being within the military lines, and held by different belligerents, and claim that this has been so adjudicated by this court in Graves vs. Tilford, 2 Duvall, 108; Bell, Berkley & Co. vs. Hall’s ex’rs, Ib., 292, and Berry, &c., vs. Southern Bank, Ib., 379.
The first case was upon assigned notes — not commercial paper — hence no question of commercial law was involved.
In the case of Bell, Berkley & Co. vs. Hall’s ex’rs, suit with attachment, was brought but a few days before the bill of exchange fell due — January 13, 1862; it had been drawn, indorsed, and accepted in Kentucky, but payable in New Orleans; the war was flagrant when it fell due; the bill had not been forwarded to New Orleans for payment, but was in suit in Kentucky; it would have been illegal to attempt then to collect this bill in New Orleans; the maker and indorsers of the bill not only had the pre *86 sumed notice of open hostilities between the two States, but the actual notice by suit that the holder was looking to them.
In Berry vs. Southern Bank, the bills of exchange were drawn and indorsed in Kentucky, and sold to a Kentucky bank, addressed to a firm in New Orleans the very day of the President’s proclamation of blockade, the official notification of war between Kentucky and Louisiana, and which were not payable until after the Congressional act of non-intercourse and the President’s proclamation thereof.
These bills were not accepted, and no evidence that they were ever in New Orleans; but suit was prosecuted upon them against the drawer and indorsers, who resided in Kentucky. It was held, upon these facts, that the war rendered it not only unnecessary, but illegal, .to send said bills to New Orleans for collection; and, therefore, protest unnecessary and notice immaterial, as the public war was itself a notification; and this doctrine is well announced by the court of error in New York (16 Johnson’s R., 443; Griswold vs. Waddington) well drawing a distinction between commercial paper drawn in one country, payable in another before and after war breaks out between these countries.
But the facts in the case now under consideration are quite different from those in Berry vs. Southern Bank. In this case the paper was made in New Orleans- before the war broke out, payable in New Orleans after it broke out; the maker and first indorsers were residents of Louisiana when it fell due, and the paper held by a New Orleans bank, though it belonged to a Kentucky bank; and the last indorser, who is now resisting it, was a resident of Kentucky.
*87 The war could be no notice to him that the maker and first indorsers, who w'ere residents of Louisiana, had not paid it to a Louisiana holder; therefore, it was essential to notify him of the fact at the earliest practical period.
The New Orleans holder very properly had it duly presented and protested for non-payment, and notified the Louisiana parties thereof, but could not then notify the Kentucky parties. But reasonable diligence would not require a sending of the notice by the very first mail sent out by the military authorities from New Orleans, through a portion of the enemies’ country, because the sending of such mail might not be known, nor might be safe, if known. When, however, the mail became regular and notorious and safe, it was the duty of the New Orleans holder to notify its principal that it might notify the antecedent Kentucky parties.’
In House vs. Adams & Co. (48 Penn., 266), the Supreme Court of Pennsylvania, in case of two bills of exchange drawn and indorsed in that State, on a New Orleans house, and which were protested — ‘the first, June 11th, 1861, the second, July 29th, 1861 — and notice of dishonor received by the holders at Pittsburg, July 11th, 1862, and was immediately delivered to the antecedent parties there, held, upon the authority of Patience vs. Townley, 2 Smith's English R,. 224, and Hopkins vs. Page, 2 Brock, U. S. R., 20, that notice of the dishonor of such paper was essential so soon as it could reasonably be made; but as, from the evidence, it appeared that the first mail received at Pittsburg from New Orleans was about July 1, 1862, and considerable intervals between them, the notice was deemed reasonable and the indorsers held liable’.
The blockade was removed from the port of New Orleans June 1, 1862. The mails were regularly sent *88 to New York, and thence to other places within the Federal lines, regularly once a week. There appears no reasonable excuse for delaying the sending of this paper from New Orleans until November 20, 1862. A delay of five months and twenty days after the blockade was raised, with regular weekly mails, which had gone safely once a week for a month, cannot be deemed reasonable, nor accounted for by the then political situation of the country.
The ports of the Gulf and Southern Atlantic were blockaded by the Federal navy; no part of the route from New York to Louisville was through the enemies’' country, or in their possession; hence, the line of communication between New Orleans and Louisville, via New York, remained open and uninterrupted.
Wherefore, the judgment is reversed as to Scally, with directions for further proceedings in accordance herewith.